**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19CV-00738-RE**

**MARCUS A. SUGGS**                                                                                                 **PLAINTIFF**

**VS.**

**ANDREW SAUL,**
*Commissioner of Social Security*                                                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Marcus A. Suggs' applications for disability insurance benefits and supplemental security income benefits. Suggs seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Suggs (DN 14) and the Commissioner (DN 19) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 13).

### Findings of Fact

Marcus Suggs ("Suggs') is 50 years old, has an eighth-grade education, and lives alone in a boarding house. (Tr. 36-37). He tried to get his GED once while incarcerated but couldn't focus enough to complete the program. (Tr. 37). A combination of factors allegedly prevents Suggs from working: he doesn't get along with people; he hears voices in his head; and he has chronic back

pain. (Tr. 38, 56-57). He claims the voice in his head is named "Mad Max" and tells him to hurt himself or others and to do bad things like "go out and rob somebody" or "break into a house." (Tr. 44-45, 53 56). In early 2018, Suggs stopped using alcohol, which has decreased his urge to break the law. (Tr. 53). Shortly thereafter, he stopped using illegal drugs when a heroin needle broke off in his arm. (Tr. 55). Things have generally been better for Suggs since quitting drugs and alcohol. (Tr. 56). In his free time, Suggs watches television and plays video games. (Tr. 52). He washes dishes and cooks simple meals but doesn't grocery shop because of his urge to steal. (Tr. 49-50)

Suggs applied for disability insurance benefits ("DIB") under Title II and supplemental security income benefits ("SSI") under Title XVI, claiming he became disabled on January 31, 2016 (Tr. 209), as a result of back issues, anxiety, depression, and an inability to read or write properly. (Tr. 247). His applications were denied initially (Tr. 82, 83) and again on reconsideration (Tr. 112, 113). Administrative Law Judge Thomas Auble ("ALJ Auble") conducted a hearing in St. Louis, Missouri, on August 14, 2018. (Tr. 31-32). Suggs attended the hearing by video from Louisville, Kentucky, with his representative. (*Id.*). An impartial vocational expert also testified at the hearing. (*Id.*). ALJ Auble issued an unfavorable decision on October 24, 2018. (Tr. 25).

ALJ Auble applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Suggs has not engaged in substantial gainful activity since January 31, 2016. (Tr. 17). Second, Suggs has the severe impairments of lumbar degenerative disc disease, diabetes, mild degenerative narrowing of the left shoulder, post traumatic stress disorder, major depressive disorder, generalized anxiety disorder, and substance abuse. (*Id.*). Third, none of Suggs' impairments or combination of impairments meets or medically equals the severity of a

listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 18). Between the third and fourth steps, ALJ Auble found Suggs has the residual functional capacity to perform light work with the following limitations:

> [H]e can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps or stairs, and occasionally balance, stoop, kneel, crouch, and crawl. He is limited to frequent reaching with the left upper extremity. He can have no exposure to excessive vibration, unprotected heights, or hazardous machinery. He is limited to simple, routine tasks. He can work only in a low stress job, defined as having only occasional decision making and occasional changes in work setting. He cannot work with a production quota, meaning no strict production standard and no rigid production pace. He can have no interaction with the general public, and only occasional interaction with coworkers so long as the contact is brief and superficial.

(Tr. 19). Fourth, Suggs is unable to perform any past relevant work. (Tr.23). Fifth and finally, considering Suggs' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 24).

Based on this evaluation, ALJ Auble concluded that Suggs was not disabled, as defined in the Social Security Act, from January 31, 2016 through the date of the decision. (Tr. 25). Suggs appealed ALJ Auble's decision. (Tr. 206-07). The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Suggs appealed to this Court. (DN 1).

## Conclusions of Law

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial

evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### B. Analysis

Suggs challenges two aspects of ALJ Auble's Residual Functional Capacity (RFC) Determination. First, Suggs claims ALJ Auble failed to provide good reasons for assigning little weight to the treating source opinion of Chloe Ruth. (DN 14, at p. 10). Second, Suggs argues ALJ Auble overstated his mental abilities after assigning great weight to the consultative examiner's opinion. (*Id.* at p. 11).

The residual functional capacity finding is the administrative law judge's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The ALJ bases his residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ is required to consider every medical opinion in a claimant's case record. 20 C.F.R. 404.1527(b); *see also Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

The regulations establish a hierarchy of acceptable medical source opinions. *Hollon v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 577, 582 (S.D. Ohio 2015). Treating physicians top the

hierarchy. *Id.* The so-called "treating physician rule" requires a treating physician's opinion be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record. 20 C.F.R. § 404. 1527(c)(2). ALJs are required to give "good reasons" for the weight assigned to a treating source's medical opinion. *Id.*  Under the Regulations applicable at the time Suggs' application was filed, "only 'acceptable medical sources' [could] be considered treating sources . . . whose medical opinions may be entitled to controlling weight." Social Security Ruling 06-03p, 2006 WL 2329939, at *2 (citing 20 C.F.R. § 404.1527(c)(2)).

Examining physicians, who often see and examine a claimant only once, are next in the hierarchy, followed by non-examining physicians' opinions at the bottom. *Hollon*, 142 F. Supp. 3d at 582. Opinions from non-treating sources, like examining or non-examining physicians, are never assessed for controlling weight; instead, they are evaluated using the factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These factors include the examining relationship (or lack thereof), specialization of the physician, consistency of the medical opinion with the record, and supportability of the opinion. 20 C.F.R § 416.927(c)(1)-(6). An exhaustive factor-by-factor analysis is not required to comply with the regulations. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

### 1. Opinion of Chloe Ruth, APRN

On October 30, 2017 and again on December 21, 2017, Chloe Ruth, APRN, wrote letters discussing Suggs' condition. (Tr. 890-91). These almost-identical letters identify that Ms. Ruth was treating Suggs for schizoaffective disorder with psychosis, posttraumatic stress disorder, dissociative disorder, and generalized anxiety disorder with antipsychotics, mood stabilizers,

anxiolytics, and psychotherapy. (*Id.*). Ms. Ruth concluded in both letters that Suggs "will most likely always have symptoms and cognitive deficits that will hinder his ability to function in a normal work environment, manage finances, and procure sustenance and therefore should be considered for disability." (*Id.*). She continued: "[Suggs] is permanently disabled and will not be able to retain any type of employment to meet his long term needs." (*Id.*). ALJ Auble assigned these opinion letters "little weight," reasoning that Ms. Ruth's opinion "is conclusory, vague as to functional limitations, and encroaches on the Commissioner's domain." (Tr. 22).

ALJ Auble did not err in evaluating Ms. Ruth's opinion. Because APRNs are not considered acceptable medical sources, ALJ Auble did not need to assess Ms. Ruth's opinion for controlling weight and did not need to provide good reasons for assigning it little weight.[1] *See Casey v. Saul*, No. 5:18-CV-00185-LLK, 2019 WL 5654345, at *2 (W.D. Ky. Oct. 31, 2019). Instead, ALJ Auble was required to evaluate Ms. Ruth's opinion using the non-exhaustive factors in 20 C.F.R. § 404.1527(c). ALJ Auble considered that Ms. Ruth did not explain her opinion but offered only vague and conclusory statements regarding Suggs' condition. He further noted that Ms. Ruth was opining as to the ultimate issue of disability, which is a determination reserved for the Commissioner. *See Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 820-21 (E.D. Mich. 2013) (quoting *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341 (6th Cir. 2008)). Suggs claims ALJ Auble should have considered the length and frequency of his treatment with Ms. Ruth, since he treated with her since 2017 and had fifteen visits with her in 2018. While Suggs clearly treated with Ms. Ruth over several years, ALJ Auble did not err in omitting this from his analysis. Again, ALJs are not required to assess every factor listed in the regulations. ALJ Auble's

---

[1] Recent amendments to the regulations now include APRNs among the list of "acceptable medical sources" but such changes are not retroactive. *See* 20 C.F.R. § 404.1502(a)(7) ("Acceptable medical source means a medical source who is a[n] . . . [APRN] . . . for impairments within his or her licensed scope of practice . . . only with respect to claims filed . . . on or after March 27, 2017."). Suggs filed his claims in August of 2016. (Tr. 209).

brief discussion of Ms. Ruth's vague opinions complies with the regulations.

2. Opinion of Psychologist G. Stephen Perry

G. Stephen Perry, Psychologist ("Dr. Perry") performed a consultative examination of Suggs on June 23, 2014. (Tr. 340). He opined, among other things, that Suggs can understand and carry out simply instructions but may be confused by moderately complex instructions; would have difficulty working quickly or completing tasks in a timely fashion; and would have difficulty interacting appropriately with others. (Tr. 346).

ALJ Auble assigned great weight to Dr. Perry's opinion, finding it was "generally consistent with the evidence that showed an anxious and dysphoric mood and affect, occasional impaired attention and focus, and reported problems getting along with others[.]" (Tr. 22). He concluded that Dr. Perry's opinion "supported moderate B criteria limitations." (*Id.*). Suggs claims that despite assigning Dr. Perry's opinion great weight, ALJ Auble did not adopt Dr. Perry's limitations in shaping Sugg's RFC determination. (DN 14, at p. 11). Specifically, Suggs takes issue with ALJ Auble not including any reduction for "off-task behavior[,]" not limiting his ability "to persist to tasks for less than 2 hour increments[,]" and not limiting him "to tasks which would require no independent judgment or no contact with coworkers or supervisors." (*Id.* at pp. 11-12). ALJ Auble's failure to include such limitations, Suggs asserts, resulted in an RFC that overstated Suggs' limitations, in light of Dr. Perry's opinion.  (*Id.* at p. 12).

ALJ Auble did not err in declining to include certain limitations from Dr. Perry's opinion in his RFC determination. An ALJ is not required to blanketly adopt all limitations in a particular opinion, even one to which he assigns "great weight." *Clark v. Comm'r of Soc. Sec.*, No. 3:15 CV 2212, 2017 WL 769781, at *10 (N.D. Ohio Feb. 28, 2017) (quoting *Smith v. Colvin*, No. 3:13-CV-00776, 2013 WL 6504681, at *11 (N.D. Ohio Dec. 11, 2013)); *see also Moore v. Comm'r of Soc.*

*Sec.*, No. 1:13cv-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013). The final responsibility for determining a claimant's RFC "rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)).

Here, ALJ Auble based his residual functional capacity determination on a review of the entire record, including the objective medical evidence. In doing so, ALJ Auble considered evidence both favorable and unfavorable to disability. For instance, ALJ Auble acknowledged that Suggs frequently presented with depressed, anxious, or dysphoric mood and that counseling notes from May of 2017 revealed he had impaired focus and attention. (Tr. 21). But ALJ Auble also considered that during a January 2017 exam, Suggs was found malingering, invalidating the scores, and that records from May and June of 2018 indicated Suggs had no memory problem and that his ability to concentrate was normal. Based on evidence "of an anxious and dysphoric mood and affect, occasional impaired attention and focus, and reported problems getting along with others," ALJ Auble limited Suggs to "simple, routine tasks that are low stress with no production quota." (Tr. 22). He further limited Suggs to no interaction with the general public and only occasional, brief and superficial interaction with coworkers." (*Id.*).

ALJ Auble's RFC restrictions are supported by substantial evidence in the record; Suggs has not demonstrated that ALJ Auble erred in not imposing further restrictions.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge
United States District Court

Copies:     Counsel of Record

October 1, 2020